(No. 35052.—)
FRANK JACKSON, Plaintiff in Error, *vs.* THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error.

*Opinion filed May 22, 1959.*

THOMAS W. VINSON, of Joliet, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and EUGENE M. PRATT, of Peoria, (FRED G. LEACH, and WILLIAM H. SOUTH, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This case comes here from Peoria County where plaintiff in error, whom we shall hereafter refer to as defendant, was denied relief sought in his post-conviction petition. Defendant, Frank Jackson, was indicted at the March term, 1956, and after a plea of guilty he was sentenced to the Illinois penitentiary for a minimum term of 15 years and a maximum of 20 years.

Eighteen months later he commenced this proceeding, contending that his plea of guilty was improperly induced in that the State's Attorney obtained his confession, his co-operation in the conviction of his co-defendants and his plea of guilty as a result of a promise that he receive a sentence of only 5 to 7 years. After a full hearing the trial court dismissed the petition.

It is argued on this appeal that the court's determination is contrary to the manifest weight of the evidence. We will review the significant facts.

The indictment here pertained to the robbery of a home in Peoria when property of the value of $4,000 was taken

and the maid found therein was brutally ravished. Defendant upon being arrested, readily confessed and proved very helpful to the authorities in the apprehension of everyone involved, their conviction and the recovery of much of the stolen goods. The State's Attorney, sheriff, and complaining witness, Edward J. Connor, were not devoid of appreciation for this service. Additionally, the sheriff was understandably grateful for the brave and heroic performance of defendant in thwarting a wholesale jail break when two prisoners, over the verbal and physical protest of Jackson, had gained their freedom, and when Jackson then blocked the iron gates and held in restraint many others who were clamoring to leave.

During the following year, the defendant enlisted the help of the sheriff in a hearing that was scheduled before the Illinois Board of Pardon and Parole. To that end the sheriff importuned the State's Attorney to prepare the following statement, which mistakenly has been referred to as an affidavit. The two officials and Connor signed. It reads:

"This is to certify that I_____, am aware that Frank Jackson was promised a sentence of from 5 to 7 years for his confession of the Crime of Robbery in Peoria County by States Attorney James P. Kellstedt.

"Jackson's confession led to the solution of a somewhat difficult case, and I feel without his cooperation the County and State's Attorney's Office would have been put to extra expenditure in gaining a conviction of Frank Jackson, William Wilson, and Thurmon Carter.

"I am wholly in accord with this lesser sentence and earnestly petition in Frank Jackson's behalf.

_____ "

On the post-conviction hearing Connor and the State's Attorney apologizingly repudiated the statement. Connor testified that he did not know of such a promise, and the State's Attorney asserted that he had made no promise that he would recommend a sentence of five to seven years.

The sheriff however undertook to remain steadfast and loyal. He testified that the confession of the defendant was the product solely of the assurance of the milder sentence. On cross-examination however he became less sure of his position. He was reminded that at the hearing in mitigation and aggravation a year and a half previously he had told the court that the defendant had confessed voluntarily and without being stimulated by any promise of leniency.

At the time Jackson entered his plea of guilty, he was advised in a scholarly fashion by the trial judge of his rights and the consequences of his plea. No detail was overlooked. Quite appropriately counsel for the People have suggested that the court's admonitory remarks might well serve other *nisi prius* judges as a model. Of special pertinence is the following: "Q. As I understand it, Mr. Jackson, the cooperation you gave, and your cooperation in the testimony was not by reason of any deal made with any law enforcing agencies? A. No, sir, it wasn't. No deal was made. Q. You weren't promised anything by the State's Attorney? A. No, sir. Q. You weren't promised anything by anybody? A. By anybody." Again on the hearing in mitigation and aggravation, he disavowed any promise of leniency by any of the officials.

The defendant was not a novice in the criminal world. He had been in and out of penal institutions many times. Certainly, if he had been promised a sentence of five to seven years his protest would not have remained chilled for eighteen months.

The trial judge became acquainted with this case in its inception; his personal knowledge of the witnesses and his observation of their demeanor gave him considerable advantage in evaluating the weight of their testimony. It was his judgment that defendant's petition seeking a new trial should be denied. The judgment is affirmed.

*Judgment affirmed.*